**Derek MASSER, Appellee**

v.

**Kristine MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.

Filed Dec. 11, 2006.

Jeffrey P. Paul, Pottsville, for appellant.

Chester C. Corse, Jr., for appellee.

BEFORE: LALLY–GREEN, TODD, and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Kristine Miller, appeals from the order entered on August 15, 2005, in the Court of Common Pleas of Schuylkill County. The order modified a prior custody order and denied Appellant's request to relocate with the parties' child from Hegins Township in Schuylkill County, Pennsylvania to Hummelstown in Dauphin County, Pennsylvania. We affirm.

¶ 2 Appellant and Derek Masser ("Father") are the parents of Kaytlyn Miller, a minor child. Appellant and Father were never married. On April 27, 1995, the parties entered into a custody stipulation that provided that Appellant would have primary physical custody of Kaytlyn and Father would have partial custody. The stipulation was approved and made an order of court on May 1, 1995. On July 29, 2004, Appellant flied a petition to modify custody and requested permission from the court to relocate from Hegins, Pennsylvania to Hershey, Pennsylvania. A custody conference was held on August 26, 2004, before a Custody Conciliation Officer. The Conciliation Officer recommended that the court appoint an evaluator. On September 29, 2004, the trial court ordered a home and custody evaluation and ordered further conciliation conferences. On December 28, 2004, Appellant filed a petition for special relief for emergency temporary custody in which she requested permission to relocate to Hummelstown until the dispute was finally resolved. The trial court denied this petition on January 10, 2005.

¶ 3 In July 2005, a relocation hearing was held and testimony was presented by both parties. The trial court made the following findings of fact:

[Father] and [Appellant], who never married each other and who have exhibited communication difficulties referable to their child, are the natural parents of Kaytlyn Miller (born February 27, 1992). Kaytlyn is [14] years old and entering the [ninth] grade.... Each party, and Kaytlyn, are in good health. Neither party [has] been convicted of any crime, nor [has] a child abuse record.

The parties had resided together for a short time around the birth of Kaytlyn, but they separated shortly thereafter. In 1995, [Father] married, and remains married, residing with his wife in Valley View, Hegins Township, Schuylkill County, Pennsylvania, with their child, Devon (Born September 27, 1995). [Father], Appellant, Kaytlyn, and Devon all attended and/or attend the Tri–Valley School District. [Father's] home in Valley View and [Appellant's] Hegins home are in the same municipality.

Prior to the trial, [Appellant] who had and has a home in Hegins Township, Schuylkill County, purchased another home in Hummelstown, Dauphin County, Pennsylvania, where she desires to move Kaytlyn. [Appellant] is employed as a registered nurse for Hershey Medical Center. She stays at her home in Hummelstown on occasion, and, at other times she stays at her Hegins home. Apparently, in anticipation of moving Kaytlyn's primary residence, [Appellant] transferred much of Kaytlyn's personal property to Hummelstown. Appellant's mother and her husband also stay at [Appellant's] Hegins home, having moved there rather recently, also, apparently, in anticipation of [Appellant's] move of Kaytlyn.

In 2001, after [Appellant] graduated from nursing school, she obtained the position at Hershey Medical Center. She currently works on a part-time basis, via a schedule of hours which she can select. Per her employment, [Appellant] is required to work twenty hours a week, but generally, she schedules herself to work 7:00 a.m. to 3:00 p.m., three days a week (Tuesday, Wednesday, Thursday), and then, usually works beyond 3:00 p.m., so to work a total of thirty-six hours on those days. [sic] ( [Appellant's] hourly pay increases significantly after working twenty hours per week.) In addition, [Appellant] periodically works on a weekend. [Appellant's] commute to Hershey Medical Center from her home in Hegins, barring weather or traffic problems, takes approximately forty-five minutes to one hour. [Appellant] believes that moving Kaytlyn to Hummelstown, which is only a few miles from Hershey Medical Center, would serve Kaytlyn's best interests as [Appellant] claims she would be able to spend more time with Kaytlyn. Should [Appellant] change her work schedule to a Monday through Friday, day shift, full-time position, she could be available for Kaytlyn each day after school. However, if Kaytlyn moved to Hummelstown, [Appellant] was not intending to change her work schedule for some unknown time. If not permitted to move Kaytlyn to Hummelstown, [Appellant] further indicated she might seek different employment.

[Appellant] earns approximately $70,000.00, based on the hours which she has the liberty to schedule. The benefits of [Appellant's] employment, in particular, the income she earns, is of importance to [Appellant], rendering the likelihood of her changing employment to an unspecified employer at an unspecified location, questionable. Although [Appellant] mentioned the possibility of living in Hegins (with the home in Hummelstown simply being considered a good investment) and working at a hospital in Pottsville, where she would earn significantly less in income, [Appellant] also indicated that such employment was approximately thirty-five minutes from Hegins.

[Father] is employed by Thermal Dynamics in Schuylkill Haven, as a welder, where he, generally, works five days a week—Monday through Friday, from 6:00 a.m. to 2:30 p.m. His commute to work is approximately forty-five minutes to an hour, again, depending on traffic and weather. [Father's] wife is employed as a manager of a medical office in Hegins. [Father] earns approximately $37,000.00 per year and pays child support for Kaytlyn in the amount of $118.00 per week. Although [Appellant] has substantially more income than [Father], the facts did not indicate that either party was not capable of providing appropriate support for Kaytlyn and, likewise, the appropriateness of the homes of [Father] and [Appellant], including [Appellant's] home in Hummelstown, are not in question.

Following the parties' separation, although [Appellant], as opposed to [Father], primarily cared for Kaytlyn, [Father] followed his schedule of partial custody on a regular basis. In addition, [Father] actually has exercised longer and more frequent periods of custody, including overnight visits, than set forth in the custody order. [Father's] parents, Marvin and Kaye Masser, also provided much care for Kaytlyn since her birth and continue to see Kaytlyn frequently, maintaining a very close relationship. Kaytlyn has become close emotionally to [Father's] wife and her family, the latter of which also provides

care for Kaytlyn. Kaytlyn has a particularly close relationship with her brother, Devon.

Kaytlyn has been, and is, involved in various sports, including basketball and softball in Hegins. [Kaytlyn's paternal grandfather] has coached Kaytlyn in softball for six years and intends to continue doing so should Kaytlyn reside in Hegins. Kaytlyn's grandfather also has an interest in coaching Kaytlyn in basketball, provided she stays in Hegins. Likewise, [Father] coached Kaytlyn's team in softball this year. [Father] and his family, including Devon, attend many of Kaytlyn's activities. Kaytlyn, likewise, attends Devon's activities. Should Kaytlyn move, the ability of each child to attend the sporting or school activities of the other, and, of [Father] and his family to attend Kaytlyn's activities, would be significantly impaired due to, *inter alia*, work schedules and the traveling involved.

Both parties have attended to Kaytlyn's schooling needs, including her homework. Two years ago when Kaytlyn was having academic problems, the parties arranged for her to be tutored. [Appellant] refused to continue with the tutor this past year; however, [Father] paid for the tutor and saw that Kaytlyn met with the tutor.

[Father], his wife, and Devon attend church in Hegins on a regular basis. Kaytlyn, likewise, attends [Father's] church, when in his custody, and has become involved in church activities. [Appellant] has not opposed Kaytlyn's church involvement with [Father] and does not take Kaytlyn to the church where [Appellant] is a member. Should Kaytlyn be allowed to move to Hummelstown, [Appellant] did not believe such would interfere with Kaytlyn's church attendance in Hegins. [Appellant], further, indicated an intention to maintain Kaytlyn's medical care and dental care with her current doctors and dentist in Schuylkill County.

Although [Appellant] has never married, she has had several long-term relationships. She currently is involved with a trauma surgeon, whom she met at Hershey Medical Center, but who now works at a facility in Memphis, Tennessee. According to [Appellant], although she sees the man on occasion, including by her traveling to Tennessee, and intends to maintain the relationship, the main is expected to live in Tennessee for the next five years.

In addition to her brother, Kaytlyn maintains a close relationship with both parties, [Appellant's] family, [Father's] family, his wife and her family, with almost all of the extended family members of both parties living in the Hegins area. The contact between Kaytlyn and various extended family members is frequent and often daily.

The court appointed custody evaluator, Joseph Sheris, opined that [Appellant] should be allowed to move Kaytlyn from Schuylkill County. He concluded that the move would not negatively impact the relationship of Kaytlyn and [Father], and, that there were, in effect, two families—[Appellant's] and [Father's] with Kaytlyn being more a part of [Appellant's] family, rather than [Father's] family.

Trial Court Opinion, 8/15/05, 2–6. On August 15, 2005, the trial court denied Appellant's request to relocate to Hummelstown, Dauphin County, and modified the existing custody order. This appeal followed.[1]

---

1. The record reflects that on September 15, 2005, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925. Appel-

¶ 4 Appellant raises the following issues on appeal:

I. Did the [trial court] err and abuse its discretion by denying [Appellant's] request that she be permitted to relocate her daughter across the county line, and did the [trial court] properly apply a *Gruber* analysis in doing so?

II. Did the [trial court] err and abuse its discretion by totally rejecting the Recommendation of the Court appointed psychologist in formulating [the court's] decision that [Appellant] should not be permitted to relocate across the county line to Dauphin County, and by placing a significant emphasis on the child's preferences in denying [Appellant's] request that she be permitted to relocate?

III. Did the [trial court] err and abuse its discretion by not only denying [Appellant's] request that she be permitted to relocate across county lines, but by significantly modifying the existing Custody Order, and by reducing the child's amount of time with [Appellant], although Father had not filed his own Petition to Modify, and was it in the best interests of the child to significantly reduce the amount of time she will be spending with her mother in response to [Appellant's] petition to relocate?

Appellant's Brief at 5.

■■■ ¶ 5 Initially, we note that our standard of review of custody matters is well-established:

In reviewing custody matters, this [C]ourt has stated that our scope of

review is very broad. Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the fact-finding functions of the court of the first instance. We have stated that an appellate court may not reverse a trial court's custody order absent a showing that the trial court abused its discretion. An abuse of discretion in the context of child custody does not consist merely of an error in judgment; it exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. The ultimate test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. Moreover, the paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being.

*Dranko v. Dranko*, 824 A.2d 1215, 1219 (Pa.Super.2003) (citations and internal quotations omitted).

■■ ¶ 6 Appellant first claims that the trial court abused its discretion by denying her request to relocate with Kaytlyn. Specifically, Appellant asserts that the trial court failed to adequately apply the standards for relocation established by this Court in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990).

¶ 7 In *Gruber*, this Court reviewed a trial court order which denied a mother's request for permission to relocate with her child from Pennsylvania to Illinois. In reversing, this Court set forth the following three factors that are to be considered

---

lant complied with this order by filing her concise statement, which included the issues

currently before us, on September 28, 2005.

when a custodial parent seeks to relocate with the parties' children to another state:

(1) The court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not a momentary whim on the part of the custodial parent.... (2) Next, the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it.... (3) Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Goldfarb v. Goldfarb,* 861 A.2d 340, 343–344 (Pa.Super.2004), quoting *Gruber,* 583 A.2d at 439. Notwithstanding the *Gruber* factors, it remains well-settled that "in custody proceedings, the paramount concern is the welfare of the children and all considerations, including the rights of the parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being." *Beers v. Beers,* 710 A.2d 1206, 1207–1208 (Pa.Super.1998) (citation omitted). "*Gruber* refines upon, but does not alter, the basic and determinative inquiry as to the direction in which the best interests of the child lie." *Bednarek v. Velazquez,* 830 A.2d 1267, 1271 (Pa.Super.2003) (citation omitted).

¶ 8 Though the *Gruber* test was originally applied to out-of-state relocations, we have held that the trial court may, in its discretion, apply the *Gruber* analysis to intra-state moves. *Bednarek,* 830 A.2d at 1271. In *B.K. v. J.K.,* 823 A.2d 987 (Pa.Super.2003), this Court held that the application of the *Gruber* factors is not necessarily required in analyzing all intra-state relocation disputes. This Court stated in *B.K.* that:

The determination of whether *Gruber* is appropriate should lie within the discretion of the trial court while being mindful of geographic distance and whether that distance is significant enough to alter the relationship between the non-custodial parent and the children, as well as whether the relocation entails different educational, cultural, and religious facilities, and whether or not the same trial court would retain jurisdiction over the children.

*Id.* at 991 (emphasis added).

¶ 9 Here, the record reflects that Appellant sought to move with Kaytlyn, from Hegins, Pennsylvania, where both parties and many of the child's extended family members currently reside, to Hummelstown, Pennsylvania. Because the proposed relocation is intrastate, it was within the trial court's discretion as to whether to apply a *Gruber* analysis in this case. *See B.K.* The trial court opinions [2] indicate that the court did consider all of the *Gruber* factors and performed a "best interests of the child" analysis before denying Appellant's request to relocate. Like the trial court and the parties, we will focus on the *Gruber* factors themselves.

¶ 10 First, with respect to the potential advantages of the move, the court stated that:

No facts were elicited to indicate a particular benefit to Kaytlyn by moving her residence, including financial, cultural or educational ... Although a parent's earning a significant income is a benefit to a child, [Appellant] does not need to relocate Kaytlyn to do so. Moreover, an undesirable disruption in the regular

---

**2.** We have reviewed both the trial court opinion accompanying the order dated August 15, 2005, and the opinion filed pursuant to Pa. R.A.P.1925, dated November 9, 2005.

contact between Kaytlyn and [Father], ... [her] extended family, and her brother, should she relocate to Hummelstown is not in her best interests. Such a move would result in limiting the, often, daily contact between Kaytlyn and her father, brother and extended family, remove her from her school, daily contact with her friends, her sports and her community for reasons which are not necessary, nor significant.

Trial Court Opinion, 8/15/05, at 6–8. The court also considered the integrity of the motives of each parent in requesting and opposing the relocation. The Court explained that:

Although [Appellant's] motives regarding the move appear sincere, they are not weighty so to justify the move.... [I]t is also found [that Father's] motive in objecting to Kaytlyn's relocation is based on legitimate concerns for Kaytlyn to maintain a strong family bond, to continue to oversee Kaytlyn's affairs, and to serve in a meaningful parental capacity.

*Id.* at 8.

¶ 11 The opinion further reflects that the trial court considered the possibility of a substitute visitation arrangement to maintain the relationship between Kaytlyn and Father. The court found that:

In light of the work hours of [Father], [Father's] regular and frequent contact with Kaytlyn, and Kaytlyn's regular contact with her family and brother, suitable partial custody arrangements, by changing [Father's] regular contact to additional weekend days or additional time in the summer, is not found to be an appropriate substitute schedule or in the best interest of Kaytlyn.

*Id.*

¶ 12 Further, the trial court summarized its findings on the *Gruber* factors, stating that:

[T]he evidence did not indicate that the move would improve substantially, or otherwise, the quality of life for [Appellant] or Kaytlyn, nor, in light of the actual circumstances in this case, that realistic substitute custodial arrangements could be arranged to foster the type of relationship between Father and Kaytlyn. Simply put, the basis for the move—the decrease in commute time to work for [Appellant] by about forty minutes, which allegedly would allow [Appellant] to spend more time with Kaytlyn upon [Appellant] changing her work schedule (which was also possible without a change in residences), was found not sufficient to justify the disruption in Kaytlyn's life, nor the significant negative impact which would result in Father's custodial rights, nor serve Kaytlyn's interests.

Trial Court Opinion, 11/9/05, at 4–5

¶ 13 We have reviewed the trial court's opinion and order in light of our standard of review. We conclude that the trial court did not abuse its discretion in denying Appellant's request to relocate. The trial court exercised its discretion and applied the *Gruber* test to the present matter despite the fact that the proposed relocation was within Pennsylvania, and amounted to only 45 minutes to one-hour travel time away from Appellant's current abode.

¶ 14 Appellant next argues that the trial court abused its discretion because the order is contrary to the court-appointed expert's recommendation. Appellant further asserts that the trial court placed undue emphasis on the preferences of the child.

¶ 15 With respect to the amount of weight a court is to place on expert testimony in custody matters, this Court has stated the following:

[W]hen [an] expert evaluation is uncontradicted or unqualified, a child custody court abuses its fact finding discretion if it totally discounts expert evaluation. To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have "competent evidence to support it." So long as the trial court's conclusions are founded in the record, the lower court [is] not obligated to accept the conclusions of the experts.

*Nomland v. Nomland*, 813 A.2d 850, 854 (Pa.Super.2002) (citations internal quotations omitted). The significance placed on the preference of the child who is at the center of the custody dispute is similarly within the discretion of the trial judge. We have held that:

Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest. The weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears. The child's preference must be based upon good reasons and his or her maturity and intelligence must also be considered.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super.2006) (citations and internal quotations omitted).

¶ 16 With respect to the lack of weight that the trial court placed on the testimony of the appointed expert, the court explained as follows:

It is found that [the court-appointed custody evaluator] did not base his conclusions on a thorough consideration of the relationship and strong ties between Kaytlyn and [Father], between Kaytlyn and [Father's] family members, and, in particular, between Kaytlyn and her brother, which clearly was established by the evidence. Moreover, ... [the expert opinion] is not found to have been based on a sufficient understanding of the significant difference between the current custody arrangement, which allows frequent contact between [Father] and Kaytlyn, [and between] Kaytlyn and ... her other family members, and the alternative custody schedule suggested by [Appellant], should Kaytlyn's residence change.

Trial Court Opinion, 8/15/05, at 6.

¶ 17 The trial court opinions reflect that the court did not totally discount the evaluation of the expert in formulating its decision, as Appellant insists. Rather, the court analyzed the recommendation of the expert in light of the facts presented and concluded that the expert did not properly account for the impact of the proposed relocation on the relationship between Kaytlyn and Father, and particularly Kaytlyn's relationship with her brother. Because there is evidentiary support in the record for the trial court's conclusions, the court was not obligated to accept the expert's conclusions. *Nomland.* We conclude that the court did not abuse its discretion in acting contrary to the expert's recommendation.

¶ 18 Finally, despite Appellant's assertions to the contrary, our review of the trial court opinions does not reflect that the court placed undue emphasis on the preferences of the child. As noted above, the court applied each of the *Gruber* factors and determined that it was not in the child's best interests to relocate with her mother to Hummelstown. This was not based solely on the child's preferences; rather, the court treated Kaytlyn's feelings about the relocation as one factor among many that the court considered.

¶ 19 The findings of the trial court have support in the record. Furthermore, the court did not override or misapply the law and its conclusions are not unreasonable. We conclude that the trial court's determination that Kaytlyn's interests are best served by remaining in Hegins, and its order denying Appellant's request to relocate, do not represent an abuse of discretion. Appellant's arguments lack merit.

 ¶ 20 In Appellant's final issue, she asserts that the trial court abused its discretion by modifying the custody order in effect at the time of her requested relocation. Appellant claims the new custody arrangement is erroneous and she submits that "she is being 'punished' for filing a [p]etition to [r]elocate." Appellant's Brief at 61.

¶ 21 It is well established that "judges in custody matters have broad powers to fashion remedies to meet the best interests of the children involved." *In re M.L.*, 562 Pa. 646, 757 A.2d 849, 851 (2000). Furthermore, the Pennsylvania Domestic Relations Code provides that: "An order for shared custody may be awarded by the court when it is in the best interest of the child: (1) upon application of one or both parents; (2) when the parties have agreed to an award of shared custody; or (3) in the discretion of the court." 23 Pa.C.S.A. § 5304. The Pennsylvania Supreme Court has recognized that "a custody judge may modify any existing custody order to a shared custody order *sua sponte* ..., or may decline to enter a custody order as agreed to by the parents." *M.L.*, 757 A.2d at 851.

 ¶ 22 The overriding concern in all custody matters is the best interests of the child involved. It is the trial court's responsibility to make a determination of the child's best interests based on the pertinent facts and circumstances of the case. *Johnson v. Lewis*, 870 A.2d 368, 374

(Pa.Super.2005). This Court has held that "[i]n evaluating whether a modification of custody is in a child's best interest, the court has an obligation to consider all relevant factors that could affect the child's wellbeing." *Johns v. Cioci*, 865 A.2d 931, 937 (Pa.Super.2004) (citation omitted). One substantial factor in determining if a modification of a custody order is in the child's best interest, although not the sole factor, "is the role that one parent has assumed as the primary caretaker of the child." *Id.* at 937 (citation omitted). "[W]hen both parents are otherwise fit, one parent's role as the primary caretaker may be given weight as the determining factor in a custody determination." *Wheeler v. Mazur*, 793 A.2d 929, 935 (Pa.Super.2002) (citation omitted). However, "[t]he court must give attention to the benefits of continuity and stability in custody arrangements and to the possibility of harm arising from disruption of long-standing patterns of care." *Johns*, 865 A.2d at 937.

¶ 23 In the matter before us, the trial court, after a full hearing and testimony from numerous witnesses, modified the custody order dated May 1, 1995. The new custody order provides that legal custody of Kaytlyn shall be shared by both parties, but primary physical custody shall remain with Appellant. These provisions are virtually identical to the 1995 order. The differences between the order in question and the 1995 order are found in the provisions establishing the schedule for partial physical custody. The new order increases Father's time with the child. Previously, Father had custody two evenings through the week after school, Tuesday and Wednesday. This has been increased by the new order to include Thursday evenings as well. The order in question also provides that the parties shall equally share custody during the

summer months. Under the previous order, the schedule remained the same in the summer as it was through the school year, with the exception that each party was permitted two weeks of exclusive time with Kaytlyn after 30 days notice to the other party.

¶ 24 In explaining the modification of the custody order, the trial court stated the following:

> [T]he custody order entered by this court was based upon all of the evidence received at trial, including the parties' positions as to proposed custody schedules, the custody terms of the then-existing court order, and the periods of custody **actually** being exercised by the parties—with the evidence establishing that Father was exercising substantially more physical custody periods with Kaytlyn than provided in the [1995] court order. The change in the terms of the custody schedule was believed in the best interest of Kaytlyn and reflected the contact actually occurring between or desired by Kaytlyn and each parent.

Trial Court Opinion, 11/9/05, at 2 (emphasis in original).

¶ 25 Our review of the certified record indicates the terms of the order in question are substantially similar to the custody arrangement that was exercised by the parties prior to the current dispute.[3] The trial court correctly considered the benefits of continuity and stability in the custody arrangement and concluded that it would be harmful to Kaytlyn to disrupt the long-standing patterns of care. *See Johns.* The order ensures that the schedule that Kaytlyn was accustomed to will continue into the future. The record supports the court's findings and conclusions. There is nothing in the record to persuade us that

the order is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, against Appellant. Therefore, we conclude that the trial court did not abuse its discretion in modifying the custody order. Appellant is entitled to no relief.

¶ 26 Order affirmed.

---

3. Appellant does not dispute that Father spent significantly more time with Kaytlyn than the prior custody order required.