J-S74030-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| D.L.D., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| C.L.B., | : | |
| | : | |
| Appellee | : | No. 1598 EDA 2014 |

Appeal from the Order entered April 30, 2014,
Court of Common Pleas, Philadelphia County,
Domestic Relations at No. 0C0707383

BEFORE:  BENDER, P.J.E, DONOHUE and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED JANUARY 14, 2015**

Appellant, D.L.D. ("Mother"), appeals from the order entered on April 30, 2014 by the Philadelphia Court of Common Pleas that granted C.L.B. ("Father") primary physical custody of their child, J.C.B. (the "Child"), following the conclusion of the 2014-2015 school year.  After careful review, we affirm.

A summary of the relevant procedural history and facts is as follows. Mother and Father married in 2000.  The Child was born in November 2002. Mother and Father subsequently separated in 2006.

> The instant custody case commenced on April 11, 2007 when Mother filed a complaint for primary physical and legal custody of [the Child].  On July 18, 2007, Mother's complaint was dismissed for lack of prosecution.
>
> On September 5, 2008, Father filed a complaint for shared physical and legal custody of

_____
*Retired Senior Judge assigned to the Superior Court.

[the Child], which was dismissed for lack of prosecution on August 3, 2009.

On July 10, 2009, Father filed a new complaint for shared physical and legal custody. On September 8, 2009, the Honorable Margaret Murphy entered an interim order granting Mother and Father shared physical and legal custody of [the Child] pending a full hearing scheduled for February 12, 2010. On February 12, 2010, the matter was continued to July 7, 2010 with the temporary order to remain in effect. The Honorable Doris Pechkurow entered a final order on July 7, 2010 granting Mother primary physical custody of the [C]hild during the school year with Father to follow a specific partial physical custody schedule. During the summer, the parties were ordered to follow the shared physical custody schedule of the September 8, 2009 Order.

On April 19, 2012, Father filed a petition to modify requesting shared physical custody and a petition for contempt stating that Mother failed to consult him on several decisions concerning the [C]hild. Father also filed a motion for expedited relief on August 6, 2012. On September 7, 2012, Father's motion for expedited relief was granted in part, and the Honorable Peter Rogers ordered home investigations on Mother's and Father's residences. Following a hearing on February 13, 2013, the Honorable Holly Ford dismissed Father's contempt petition and entered a final order confirming primary physical custody with Mother and partial physical custody with Father. The parties were granted shared legal custody and ordered to attend family counseling.

On August 19, 2013, Mother filed a petition to modify requesting a change in the pick-up and drop-off location of the [C]hild and that [the Child] attend school in Philadelphia. Mother also filed a petition for contempt on August 26, 2013 stating that Father moved and enrolled the [C]hild in school in Collegeville (Perkiomen) without her consent. After

a hearing on January 31, 2014, the Honorable Holly Ford held the matter in abeyance until the [C]hild could be interviewed by the court. On February 6, 2014, Judge Ford interviewed [the Child] and entered an interim order directing both parties to submit information to Chambers regarding their respective choices of school for the [C]hild to attend the following academic year. Mother's contempt petition and petition to modify were relisted for status on April 30, 2014.

After a hearing on April 30, 2014, Judge Ford entered a final order awarding Mother primary physical custody of [the Child] during the school year with Father to have partial physical custody every weekend, and the parties were directed to keep the [C]hild enrolled at Holmes [(the Child's current school)] through the end of the 2014-2015 school year. The order transfers primary physical custody to Father during the 2015-2016 school year with partial physical custody to Mother, and [the Child] is to attend Perkiomen. The parties were awarded shared legal custody.

On May 30, 2014, Mother filed a timely notice of appeal of the April 30, 2014 [o]rder and a statement of errors complained of on appeal [] simultaneously.

Trial Court Opinion, 7/11/14, at 1-3 (internal citations omitted).

On appeal, Mother raises the following issues for our review:

A. Whether the [trial] court committed an abuse of discretion when it ordered that during the 2015-2016 school year that Father shall receive primary physical custody of the minor child and Mother shall have partial physical custody of the minor child without any analysis of the sixteen [sic] custody factors pursuant to 23 Pa[.C.S.A.] § 5328 and/or 23 Pa[.C.S.A.] § 5323(d)?

- 3 -

B. Whether the [trial] court committed an abuse of discretion when it issued an order to change the custody, living accommodations, and school districts for the minor child that will take effect approximately a year and five months after the court's order was entered?

C. Whether the [trial] court committed an abuse of discretion when it ordered that during the 2015-2016 school year that the minor child shall attend Perkiomen School without determining how this change serves the best interest of the child pursuant to 23 Pa[.C.S.A.] § 5328?

D. Whether the [trial] court committed an abuse of discretion when it ordered that during the 2015-2016 school year that the minor child shall attend Perkiomen School sans testimony or evidence from current school officials or school officials affiliated with the Perkiomen School to determine minor child's best interests, needs, and how or if those needs could be addressed at the Perkiomen School?

E. Whether the [trial] court committed an abuse of discretion when it ordered that Father shall receive primary physical custody of the minor child without any examination of Father's current household members pursuant to 23 Pa[.C.S.A.] §[§] 5329 and 5329.1?

Mother's Brief at 5.

We begin with our well-settled standard of review for custody cases:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we

> are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.K. v. S.P.K.*, __ A.3d __, 2014 WL 4923111, at *11 (Pa. Super. Oct. 2, 2014) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011)).

For her first issue on appeal, Mother asserts that the lower court committed an abuse of discretion when it entered its April 30, 2014 order "without any analysis of the [seventeen] custody factors pursuant to 23 Pa[.C.S.A.] §§ 5328 and/or 5323(d)."[1]  Mother's Brief at 8.  Mother argues that "Judge Ford failed to mention in open court, via written opinion, or in an order[,] her analysis of the [seventeen] factors delineated in 23 Pa[.C.S.A.] § 5328(a)[,]" and that the trial court's "failure to do so constitutes an abuse of discretion." *Id.* at 12.

This Court recently explained:

> With any child custody case, the paramount concern is the best interests of the child.  The legislature

---

[1]  We note that although it is not relevant to the disposition of this case, neither of the parties nor the trial court recognizes that the legislature amended section 5328(a) and added a seventeenth factor, which became effective on January 1, 2014.  The statute now includes 23 Pa.C.S.A. § 5328(a)(2.1), which requires consideration of child abuse and involvement with child protective services.  Although Mother filed her modification petition prior to the effective date of the amended version of section 5328, the proceeding on the petition occurred after the effective date, so the amended version applies.  *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012).

- 5 -

enacted section 5328(a) of the Child Custody Act in order to delineate the factors the trial court must consider when awarding any form of custody. Section 5328(a) sets forth a list of [seventeen] factors that trial courts must consider in a best interests of the child analysis in making any custody determination.

*D.K.*, 2014 WL 4923111, at *6-7 (internal citations and quotations omitted).

The seventeen factors enumerated in section 5328(a) include:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic

violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

42 Pa.C.S.A. § 5328(a).

Not only are courts required to consider the aforementioned factors, but "[s]ection 5323(d) provides that a trial court 'shall delineate the reasons for its decision on the record in open court or in a written opinion or order.'" ***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014); ***see also*** 23 Pa.C.S.A. § 5323(d). This Court has established that "section 5323(d) requires the

trial court to set forth its mandatory assessment of the [seventeen] [section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **A.V.**, 87 A.3d at 823 (quoting **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)).

In **C.B.**, this Court noted that "[s]ection 5323(d) does not contemplate a specific time period for compliance with section 5328." **C.B.**, 65 A.3d at 952. We nonetheless concluded:

> To interpret section 5323(d) so as to permit a trial court to forego addressing the factors until it issues its Pa.R.A.P. 1925(a) opinion – *i.e.*, after a party has filed an appeal and a concise statement – renders that section's language mere surplusage. Under such an interpretation, if a party decides not to appeal the custody order, and the trial court does not address the factors contemporaneously with the custody order, the court may never address the factors. However, the [Custody] Act's language requiring the trial court to do so is clear and unequivocal. **See** 23 Pa.C.S.[A.] §§ 5328 ("[T]he court **shall** determine the best interest of the child by considering all relevant factors …") (emphasis added); 5323(d) (The court "**shall** then delineate the reasons for its decision on the record in open court or in a written opinion or order.") (emphasis added). Such an interpretation would all but guarantee that, in many cases, compliance with the [Custody] Act would never occur. This result clearly is not what the General Assembly intended in promulgating the new [Custody] Act, because it would render the mandatory language in section 5328 and section 5323 meaningless.

**Id**. at 952-53 (emphasis in original).

- 8 -

In light of its holding, the **C.B.** Court directed trial courts to "address the statutory factors, either orally in open court or in a written opinion, contemporaneously with the issuance of the custody order[,]" providing that

> [i]f, because of the court's substantial case load or other factors, compliance with the [Custody] Act is not possible contemporaneously with the order, the trial court should indicate in the custody order that its examination of the factors is forthcoming shortly, so as to not impede a litigant's ability to pursue an appeal if the litigant so chooses.

**Id**. at 955.

In the case at bar, the trial court failed to comply with the mandate set forth in **C.B.**, as the trial court neither discussed the seventeen factors on the record in open court nor issued a written opinion contemporaneously with its order detailing its analysis of the seventeen factors in this case. Although the trial court provided a discussion in its 1925(a) opinion of its "findings of fact with regard to the [seventeen] custody factors, which, in the aggregate, form a basis for the [April 30, 2014 order,]" this discussion of its assessment of the custody factors arose only after Mother filed the instant appeal. Pursuant to the holding of **C.B.**, the trial court committed an error of law. **See id**. at 952-53.

Nevertheless, although Mother argues that the trial court erred in failing to provide its analysis of the seventeen factors prior to her filing an appeal, she neither claims prejudice as a result of the trial court's infraction nor proposes a remedy. Moreover, Mother raised specific allegations of error

in her 1925(b) statement relative to the trial court's consideration of the seventeen custody factors and presents arguments against the trial court's analysis of the seventeen factors in her brief on appeal. Thus, Mother had a full opportunity to present a meaningful argument for appellate review. To vacate the trial court's April 30, 2014 order on such a procedural technicality in the absence of prejudice to the appellant would be to elevate form over substance. This is especially so because this is a children's fast track appeal and the purpose of this designation is to "expedite the disposition" of the case. *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009). We therefore address the merits of Mother's claim.

Mother challenges the trial court's assessment of the section 5328(a) factors, specifically assailing the trial court's analysis with regard to factors three, four, six, eight, twelve, and sixteen. At the outset, we agree with Mother that the record does not support the trial court's findings of fact made concerning the complained of factors.

Regarding factor three, we agree with Mother that the record does not support the trial court's conclusion that "as [the Child] enters his teen years it would be beneficial for him to spend more time with [] Father so as to have a steady male role model." *Id.* The trial court's opinion belies this notion as the trial court states that both Mother and Father are equally capable of performing parental duties, of maintaining a "loving, stable, consistent and nurturing relationship with the [C]hild adequate for the

[C]hild's emotional needs," and of attending to the Child's "daily physical, emotional, developmental, educational and special needs of the child." *Id*. at 6, 8-9.

We also agree with Mother that the trial court erred by emphasizing the fact that the Child attended five different schools since he began kindergarten in weighing factors four, eight, and sixteen in Father's favor. The record reflects that all but one of the school changes were the joint decision of Mother and Father. *See* N.T., 4/30/14, at 24-25.

Furthermore, we agree with Mother that the record contains no evidence that the school changes negatively affected the Child. *See* Mother's Brief at 15. At the hearing, Father asked the Child's teacher whether changing schools several times would affect the Child's learning disability or potentially cause a learning disability. N.T., 4/30/14, at 18. Miss Johnson responded by stating, "I can't answer based on what causes a specific learning disability. That's from a psychologist point of view with a diagnosis. I can say that basically what brings his levels low is missing skills." *Id*. In the absence of any testimony establishing that the change in schools "had an ongoing negative effect on the [Child's] welfare," we conclude that the trial court erred by basing the custody award on the fact that the Child attended five different schools since he began kindergarten. *See In re Leskovich*, 385 A.2d 373, 377 (Pa. Super. 1978) ("we could not base a custody award on such a finding unless we could conclude that the

past behavior had an ongoing negative effect on the children's welfare."); *see also Commonwealth ex rel. Jordan v. Jordan*, 448 A.2d 1113, 1116 (Pa. Super. 1982) (reversing the lower court's decision "where there was no testimony at trial to support an inference that the changes in residence adversely affected the child.").

Regarding factor six, which requires the trial court to consider the child's sibling relationships, the record reveals no support for the trial court's determination that living with Father "could potentially encourage [the Child and J.R., Father's fiancée's son, who, like the Child, also has a learning disability] to build a support network for one another at home and at school, benefitting both children." *See* Trial Court Opinion, 7/11/14, at 7. The only testimony regarding the Child's relationship with J.R.[2] occurred during the

_____

[2] Mother also argued that Father's fiancée's son, J.R., is not the Child's sibling as he is neither a biological sibling nor a step-sibling. We find this argument to be without merit. As the record reflects, Father "has been with his fiancée and her son, J.R., for the past eight years." Trial Court Opinion, 7/11/14, at 15 (citing N.T., 4/30/14, at 46). We are unaware of any case law establishing that non-biological sibling relationships do not bear on a child's best interests. To the contrary, this Court has previously considered step-sibling and quasi-sibling relationships in assessing a child's best interests in a variety of contexts. *See M.E.V. v. F.P.W.*, 100 A.3d 670, 678 (Pa. Super. 2014) ("Plainly all of the sibling, step-sibling, and quasi-sibling relationships in this case have either emerged or evolved since the trial court's 2012 order was entered in ways that bear materially on the Children's best interests."); *Fuehrer v. Fuehrer*, 906 A.2d 1198, 1204 (Pa. Super. 2006) (concluding that the trial court erred in granting relocation without considering "how the children's move to another country [would] impact the relationship and the bond that must exist between the[] children and their older step-sisters."); *Ketterer v. Seifert*, 902 A.2d 533, 541 (Pa. Super. 2006) ("this Court's concern must be centered upon whether the

trial court's *in camera* interview of the Child, wherein, the following exchange occurred:

> Q. Let's see what else, you have a stepbrother or kind of a stepbrother, [J.R.] at your dad's house?
>
> A. Yes.
>
> Q. Do you get along with him?
>
> A. Sometimes.
>
> Q. You know that he has some reading problems too, don't you?
>
> A. Yes.
>
> Q. Do you work with him at all?
>
> A. No.

N.T., 4/30/14 (child interview), at 12-13. In the absence of any other testimony or evidence, we conclude that there is no evidence in the record to support the trial court's finding in this regard.

Finally, we agree with Mother that in considering the parties' availability to care for the Child pursuant to factor twelve, the trial court mischaracterized Mother's testimony at trial regarding her willingness to

---

move is in S.K.'s best interests. A move across the country will not only take S.K. away from his father and step siblings, with whom he shares a close relationship, but also an educational plan."). Moreover, the comment to section 5328 provides that "[s]ubsection (a)(6) is intended to include full-blood siblings, half-blood siblings, step-siblings and adoptive siblings." Thus, Mother's argument that the trial court's analysis of the Child's relationship with J.R. is flawed because J.R. "is in no way a sibling of [the Child]" is without merit.

make arrangements to travel to Perkiomen. In its analysis of this factor, the trial court stated that "Mother definitively stated that it was 'too far' for her to go when questioned as to whether she was willing to make arrangements to travel to Perkiomen." **See** Trial Court Opinion, 7/11/14, at 10. The record, however, provides as follows:

> Q. Would you agree for [the Child] to attend school [at Perkiomen]?
>
> A. No.
>
> Q. Why?
>
> A. It's too far for me to, you know, go to [sic] -- I feel as though he has special services, then I wouldn't see [the Child]. I wouldn't get to see him, you know, as much as I see him. And the services that he get [sic] now I think is more than enough. It's adequate. Because he's getting the services that he needs from both school and both from private tutoring.

N.T., 4/30/14, at 26.

At no point did the trial court ask Mother whether she was willing to make arrangements to travel to Perkiomen. Mother's testimony simply expressed her preference regarding the Child's school, stating that she did not want the Child to attend Perkiomen because she felt he received adequate services from the school he currently attended. **Id.** Thus, we find the trial court's statement to be unsupported by the record.

The trial court's erroneous findings notwithstanding, we conclude that reversal is not warranted. Rather, as previously stated, this Court's role is

to determine "whether the trial court's conclusions are unreasonable as shown by the evidence of record." **D.K.**, 2014 WL 4923111, at *11 (quoting **J.R.M.**, 33 A.3d at 650).

In addition to the unsupported considerations, the trial court relied upon the Child's preference to spend more time with Father; Father's testimony that he is the one that helps the Child with his school work and projects; and that although the Child is doing well at Holmes with his special education teacher, he will have to change schools for seventh grade and Perkiomen is a better school and has special education programs to meet the Child's needs. The record supports the trial court's findings in these respects.

First, Mother argues that there is no evidence to support the trial court's finding that Father is more proactive in the Child's education. Mother's Brief at 13. The trial court, however, deemed credible, Father's testimony that he is the parent that helps the Child with school work and projects. Trial Court Opinion, 7/11/14, at 6; **see** N.T., 4/30/14, at 41-42. As the trial court is the sole arbiter of the credibility of witnesses, we are unable to find that the trial court abused its discretion. **See Busse v. Busse**, 921 A.2d 1248, 1255 (Pa. Super. 2007) ("The fact-finder is in the best position to assess credibility of witnesses and we do not disturb credibility determinations on appeal.").

Next, despite Mother's assertion that the trial court's statement that Father found a school system equipped to address the Child's needs "is in opposition to the [n]otes of [t]estimony[,]" Mother's Brief at 18, we conclude that the record supports the trial court's conclusion that Perkiomen is equipped to address the Child's needs. The record reflects that Perkiomen has a "Wilson Program which is specific for reading," and has "a variety of options within the district if a more or less intensive program is warranted." N.T., 4/30/14, at 52-53. Mother presented no evidence to contradict the trial court's finding on this issue. The trial court also reviewed a packet of information presented by Father regarding the offerings Perkiomen had for the Child's education, as well as a packet submitted by Mother regarding the Child's current school district. As our standard of review provides, it is not this Court's role to make independent factual determinations or disturb the trial court's determinations that are supported by the record. **See D.K.**, 2014 WL 4923111, at *11.

The trial court also properly considered the Child's preference in reaching its decision. "The Pennsylvania Domestic Relations Code, 23 Pa.C.S.A. § 101, *et seq.*, is clear that a trial court is required to consider a child's preference before entering an award of partial custody[.]" **Gianvito v. Gianvito**, 975 A.2d 1164, 1170 (Pa. Super. 2009); 23 Pa.C.S.A. § 5303(a)(1).

> Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest. The weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears. The child's preference must be based upon good reasons and his or her maturity and intelligence must also be considered.

**R.M.G., Jr. v. F.M.G.**, 986 A.2d 1234, 1239 (Pa. Super. 2009) (citing **Masser v. Miller**, 913 A.2d 912, 920 (Pa. Super. 2006)).

The record reflects that the trial court interviewed the Child, who was eleven years old, and "found him to be a competent witness." Trial Court Opinion, 7/11/14, at 8. The Child expressly stated that he wished to live with Father because he did not get to see him enough and really missed him. **Id.**

In **McMillen v. McMillen**, 602 A.2d 845 (Pa. 1992), our Supreme Court upheld the trial court's determination that a child's best interest would be served by placing him in the custody of his father based on the child's stated preference. **Id.** at 848.

> Having reviewed the previous custody orders in this case, the trial court concluded that both the home of the mother and that of the father were equally acceptable. The trial court, therefore, was forced to look at other factors in making its decision. The only testimony taken at the most recent custody hearing was that of the child, Emmett, who was then almost 11 years old. Emmett testified that he preferred to live with his father.

* * *

> The record supports the trial court's finding that both households were equally suitable. This being so, Emmett's expressed preference to live with his father could not but tip the evidentiary scale in favor of his father. Thus, the trial court's conclusion that it would be in Emmett's best interest to modify the prior custody order by transferring primary custody from the mother to the father is supported by the record, and we find no gross abuse of discretion by the trial court in awarding primary custody to the father.

*Id*. at 847-48.

Similar to **McMillen**, in this case, the record reflects that the trial court determined that Mother and Father were equally capable of providing for the Child, but found particularly important the Child's expressed preference to live with Father. Thus, as in **McMillen**, we find no error in the trial court's determination as the Child's preference ultimately "tip[ped] the evidentiary scale in favor of [] [F]ather." **See id**. at 848.

Following our review of the record, we conclude that the trial court's decision to award physical custody to Father after the 2014-2015 school year is supported by the record. Accordingly, the trial court did not abuse its discretion. Mother is not entitled to relief on her first issue.

For her second issue on appeal, Mother argues that the lower court committed an abuse of discretion by entering a custody order one year and five months prior to the order taking effect. Mother's Brief at 19. Mother

contends that the matter is not ripe for consideration because it "fails to take into account the circumstances at the time of the hearing." *Id.* at 20.

We note that Mother's discussion of this issue is one paragraph and that she does not develop her argument in support of her assertion that the matter was not ripe for the trial court's consideration. The argument portion of Mother's brief contains one citation to *Hartman v. Hartman*, 476 A.2d 938 (Pa. Super. 1984), which states that courts must "look at the parties' circumstances existing at the time of the hearing." *Id.* at 941 (quoting *In re Leskovich*, 385 A.2d at 377). Mother also provides one conclusory statement that "[t]o project what will happen when the [C]hild is in seventh grade, almost two years after the entry of the said order, fails to take into account the circumstances at the time of the hearing and rules on a matter that is not ripe for consideration." Mother's Brief at 19-20.

Under Rule of Appellate Procedure 2119(a), the argument section of an appellate brief must provide "discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). As Mother fails to develop meaningful argument on this issue, we conclude that Mother's claim is waived, as it is wholly inadequate to present an issue for our review. *See Butler v. Illes*, 747 A.2d 943, 944 (Pa. Super. 2000) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.").

Even if Mother had not waived the issue, we would conclude that Mother's claim is without merit. Our review of the record reveals that, contrary to Mother's assertion, the trial court did "take into account the circumstances at the time of the hearing," and issued its determination based on those considerations. The trial court determined, based on the Child's progress at the school as well as the positive relationship the Child had with his special education teacher, that he should remain at Holmes until the end of the 2014-2015 school year. Trial Court Opinion, 7/11/14, at 13. The trial court further found that because the Child could only attend Holmes through the sixth grade, the Child would have to transfer schools after the 2014-2015 school year, and the evidence presented revealed that the Child's best interests would be served by thereafter attending Perkiomen and living primarily with Father. *Id.* Accordingly, Mother's second issue on appeal is without merit.

For her third and fourth issues, Mother argues that the trial court committed an abuse of discretion when it ordered that the Child shall attend Perkiomen School beginning in the 2015-2016 year. Mother's Brief at 20-21. Mother first argues that the trial court committed an abuse of discretion when it entered this order without determining how it serves the best interest of the Child pursuant to section 5328. *Id.* at 20.

The trial court "maintains that it was not required to consider the statutory factors under 23 Pa.C.S.[A.] § 5328(a) in deciding which school

[the Child] should attend as it was not an award of custody." Trial Court Opinion, 7/11/14, at 12. The trial court cites to **M.O. v. J.T.R.**, 85 A.3d 1058 (Pa. Super. 2014), wherein this Court held that where a trial court "merely modifie[s] a discrete custody-related issue, it [is] not bound to address the sixteen [sic] statutory factors in determining the Children's best interest. However, under Section 5338, the trial court [is] required to determine that the modification that it did order was in the Children's best interest." **Id.** at 1063.

In another recent decision, this Court further addressed this issue, stating:

> It also is true that resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times – like here – these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

**S.W.D. v. S.A.R.**, 96 A.3d 396, 403 (Pa. Super. 2014).

Unlike **S.W.D.**, the issue of what school the Child should attend is not an "independent, discrete issue" in this case. Instead, the determination of which school the Child attends simultaneously determines which parent receives physical custody, as the two potential schools are located an hour from each other, with Perkiomen being nearer to Father's residence. In this instance, the decision that the Child should attend Perkiomen required a change in the award of physical custody from Mother to Father. As the trial court's order modified the custody order, it was required to consider the statutory factors under section 5328(a).

As we determined at the outset of this memorandum, however, the trial court considered the statutory custody factors under section 5328 and provided its analysis with respect to those factors. Furthermore, we have already concluded that the trial court considered the evidence presented by the parties and properly concluded that the modification of the custody order and the change in the Child's school placement for the 2015-2016 school year served the Child's best interest. Thus, these arguments are without merit.

For her fifth and final issue on appeal, Mother asserts that the lower court committed an abuse of discretion by failing to examine Father's current household members pursuant to 23 Pa.C.S.A. §§ 5329[3] and 5329.1[4].

_____

[3] Section 5329 provides, in relevant part:

Mother's Brief at 22. The trial court argues that Mother waived this issue, stating:

> During the hearing on April 30, 2014, no evidence was presented to indicate that Father or any of his household members had been convicted of or had pled guilty to any enumerated offense or that any substantiated child abuse reports existed. In fact, counsel for Mother failed to address the issue altogether.

Trial Court Opinion, 7/11/14, at 15.

---

> Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty to or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that parent[.]

23 Pa.C.S.A. § 5329.

[4] Section 5329.1 provides, in relevant part:

> [W]here a party seeks any form of custody subject to the examination of the parties, the court shall determine:
>
> * * *
>
> (1)(ii) Whether a party or a member of the party's household has been identified as the perpetrator in an indicated or founded report of child abuse.

23 Pa.C.S.A. § 5329.1.

Rule 302(a) of the Pennsylvania Rules of Appellate Procedure states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). As Mother failed to raise this issue at trial, this issue is waived.

Order affirmed.

Bender, P.J.E. joins the Memorandum.

Strassburger, J. files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2015