J-A13015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.A.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| R.A.F., | |
| Appellee | No. 1994 WDA 2015 |

Appeal from the Order entered November 23, 2015,
in the Court of Common Pleas of Erie County,
Domestic Relations, at No(s): 12741-2004

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                **FILED SEPTEMBER 20, 2016**

M.A.F. ("Mother") appeals from the order dated and entered on November 23, 2015, that awarded R.A.F. ("Father") legal and physical custody of the parties' two minor, male children, P.F. (born in March 2001), and B.F. (born in July 2002) ("the Children").[1]  The order did not provide for Mother to have holiday visitation, outside of her regularly-scheduled visitation days.[2]  We affirm.

---

[1] The parties' oldest child, C.F., a female born in April 1998, is not part of this appeal.

[2] Although the trial court's order provided that Father has "full" legal and physical custody, and Mother has visitation, the Child Custody Act, (the "Act"), 23 Pa.C.S.A. § 5323(a), does not provide for "full" custody or visitation.  Thus, we treat the trial court's order as awarding Father "sole legal custody," "primary physical custody," and Mother "partial physical custody," as those terms are set forth and defined in that section of the Act.

The trial court set forth the factual background and procedural history of this appeal, as follows.

> Mother filed a [c]omplaint for [c]ustody in November 2012. An [o]rder was entered in February 2013 giving the parents shared physical and legal custody of the Children. Since the time of the original order, multiple filings for [s]pecial [r]elief and other emergency petitions were filed by both parties. Many of the petitions filed by Father addressed his concerns regarding Mother's treatment of the oldest child, [C.F.], and the middle child, [P.F.].
>
> The parties were first before th[e trial] court to resolve custody and visitation disputes in 2015. In May 2015, a temporary order was entered giving Father full physical and legal custody of the minor children. The oldest child, [C.F.], was permitted to stay with [] Father and make her own decision regarding if and when visitation with [] Mother would take place. The middle and youngest children were to have supervised visits with [] Mother. Additionally, the parents were ordered to undergo a psychological evaluation. Mother was not permitted to contact the two youngest children by phone, text, or email while in Father's care without Father's permission. The matter was schedule for a [90-]day review.
>
> Before the review hearing was held, problems continued to surface. In June 2015, Father filed an emergency petition alleging [] Mother disregarded the order's no-contact provision by engaging in an exchange of picture and text messaging *via* social media with [P.F.]. Mother filed a counter-petition, alleging Father was in contempt of court for unilaterally ceasing [P.F. and B.F.'s] supervised visits with [] Mother. At the end of this hearing, th[e trial] court entered a temporary order, pending another review hearing in [90] days. The final hearing took place on November 20, 2015. Findings of fact regarding the statutory best interests factors were reduced to writing and filed on the same day a final order was entered. This appeal followed.

## Facts

The crux of the dispute between Mother and Father stems from custody and visitation with the middle child, [P.F.], and the

- 2 -

youngest child, [B.F.]. Custody and visitation with the oldest child, [C.F.], was not an issue. [N.T. Custody Trial, 8/26/15, at 6]. The emotional and mental well-being of the middle child, [P.F.], was the greatest concern to the trial court at the time of the review hearing in May 2015, and the most recent trial in November 2015. Among those who testified at the hearing in August were Dr. Anthony DeMarco, Mother's court-ordered psychological evaluator[;] [] Father[;] the Children *in camera*[;] and [] Mother. Several exhibits showing the social media contact between [] Mother and [P.F.] were also admitted.

The testimony of Dr. DeMarco showed [] Mother currently suffers from generalized anxiety disorder. [***Id.*** at 22]. He recommended continued treatment with her current therapist and psychiatrist. According to the doctor, the diagnosis of generalized anxiety disorder would not, in and of itself, prevent Mother from being a good parent. Many other factors needed to be considered outside the scope of his evaluation to make this determination. [***Id.*** at 23 and 26].

However, further testimony showed Mother's mental health and its effect on [P.F.], called into doubt her ability to successfully parent.

There is no question Mother had contact with [P.F.] after the court's no contact order and that the contact adversely affected him. Father testified he became concerned about [P.F.] when [P.F.] started to uncharacteristically lash out at his brother and sister. [***Id.*** at 49-50]. [C.F.] confirmed [P.F.'s] outbursts. She reported [P.F.] had frequent meltdowns, cried inconsolably and without warning, and also had trouble sleeping. [***Id.*** at 146 and 148]. She further reported that after living full time with their father, [P.F.] was doing much better. He [was not] picking fights, "freaking out" as much, and was sleeping better. [***Id.*** at 146].

Soon after the initial outbursts began, Father and step[-]mother accessed [P.F.'s] iPod and discovered [P.F.] had contact with his mother *via* the social media platforms of [Snapchat] and Instagram. Much of this contact occurred after the trial court issued its order prohibiting [] Mother from contacting the Children while in [] Father's care. [***Id.*** at 51]. Father and step-mother took "screen shots" of these messages, which were admitted into evidence. This [c]ourt also viewed some of the

- 3 -

messages directly from [P.F.'s] iPod and determined many were sent subsequent to the entry of the no-contact order. [*Id.* at 114, 117, and 153]*.*

Not only were the messages sent in violation of a court order, their content was inappropriate. The Instagram photographs depicted [] Mother wearing a variety of different wigs and make-up. Additional pictures illustrated Mother with her eyes closed, and were captioned "dreaming of getting my boys back." Another photograph depicted [] Mother as partially nude and pregnant captioned "Me carrying my second baby who I thought I would never have. . . ." Numerous other messages targeted to the child discussed parental alienation. Many of these photographs were accessed, viewed by, and "liked" by [P.F.].

Mother's testimony, though vague and evasive, confirms she directed [P.F.] to access much of this media. In response to a question asking her whether she contacted [P.F.] *via* social media after the May 2015 court order, she responded "I think I did[,]" despite clear evidence she contacted [P.F.] dozens of times. [*Id.* at 108]*.* She also then went on to deny and then quickly admit her attempts to contact [P.F.] *via* the Instagram messaging system. [*Id.* at 113]. Later, Mother also confirmed she encouraged [P.F.] to "like" or view pictures she posted. [*Id.* at 114]*.* At one point, Mother attempted to back pedal and explain away her actions by testifying she meant "I posted these pictures, but you [P.F.] haven't said you liked them. It's up to you if you want to put hearts or not. It's not that he didn't like the pictures. He may not have seen them." [*Id.* at 116]*.* Much of Mother's testimony proceeded in this way. She conveniently only remembered what she wanted. [*Id.* at 154]*.*

A barrage of text messages recovered by Father and step-mother showed another facet of Mother's consistent attempts to contact [P.F.]. In several instances, [P.F.'s] account contained numerous rapid[-]fire messages from [] Mother, without a response from him. [C.F.] explained when [P.F.] was at his worst emotionally, she believed it was because "he felt really nervous because he knew he shouldn't have been doing it, [messaging the mother] but he felt bad because she told him that he should be doing it, but he knew that he shouldn't." [*Id.* at 144]*.* This notion is corroborated by [P.F.'s] responses in his correspondence with [] Mother. Many times, when [P.F.] did respond, it was to warn [] Mother that "they" knew the two of

them were texting, that he didn't want them to get caught and for her to get in trouble, and that she needed to act "normal" in court so they could see each other again.

[P.F.'s] testimony showed that though he is a bright, articulate, and sensitive child, he is also very troubled because he has been placed in the middle of his parents' bitter dispute. He clearly loves his mother and, at minimum, given a choice, would want to go back to 50/50 custody. [*Id.* at 136]. Though he said he missed his mother and wanted to be with her, he also said much of it stemmed from wanting to be there for her because sometimes she "doesn't know what she's doing" and that she needs help. [*Id.* at 129-130 and 135]. He was obviously very conflicted. [P.F.] testified he still participates in counseling frequently and is on medication for anxiety. [*Id.* at 131-132]. He also admitted to having initiated some of the contact with [] Mother *via* contact [in] Instagram and [Snapchat]. [*Id.* at 129].

At the final hearing in November [2015], oral and written findings of fact[,] analyzing the best interest factors required by 23 Pa.C.S.A. § 5323[,] were entered concurrent with the final order which is the subject of this appeal.

Trial Court Opinion, 1/19/16, at 1-6 (some internal capitalization omitted).

On November 23, 2015, the trial court entered the order that awarded Father legal and physical custody of P.F. and B.F. The custody order did not provide for Mother to have holiday visitation, outside of her regularly-scheduled visitation days. On November 23, 2015, the trial court also entered a separate order making findings of fact pursuant to 23 Pa.C.S.A. § 5328(a), prepared following the hearing on November 20, 2015, which we incorporate herein. On December 18, 2015, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal.

In her brief on appeal, Mother raises the following issues:

- 5 -

A. Whether the trial court erred and/or abused its discretion when it failed to consider the Children's best interest in fashioning a holiday schedule for [Mother]?

B. Whether the trial court erred and/or abused its discretion when it found that Mother suffered from a mental health condition that impacted her ability to care for the Children?

C. Whether the trial court erred and/or abused its discretion when it gave little weight to the Children's preference?

D. Whether the trial court erred and/or abused its discretion when it granted Father full legal custody of the Children?

E. Whether the trial court erred and/or abused its discretion when it found Mother attempted to turn Children against Father?

F. Whether the trial court abused its discretion as its findings were against the weight and not supported by the evidence supported [sic] at trial?

Mother's Brief at 8.

As the custody trial in this matter was held in August and November of 2015, the Act, 23 Pa.C.S.A. §§ 5321-5340, is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately,

- 6 -

the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (internal citations omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting*

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (internal quotations and citations omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328 and 5338.

Section 5338 of the Act provides that, upon petition, a trial court may

modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act, 23 Pa.C.S.A. § 5328(a), sets forth the best interest factors that the trial court must consider. *See E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5323(d) provides that the court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. 23 Pa.C.S.A. § 5323(d).

Section 5322 of the Act defines the relevant forms of custody as follows:

**§ 5322.  Definitions**

**(a) This chapter.—** The following words and phrases when used in this chapter shall have the meanings given to them in this subsection unless the context clearly indicates otherwise:

. . .

**"Legal custody."** The right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions.

. . .

**"Partial physical custody."** The right to assume physical custody of the child for less than a majority of the time."

**"Physical custody."** The actual physical possession and control of a child.

**"Primary physical custody."** The right to assume physical custody of the child for the majority of time.

. . .

**"Shared legal custody."** The right of more than one individual to legal custody of the child.

**"Shared physical custody."** The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

**"Sole legal custody."** The right of one individual to exclusive legal custody of the child.

**"Sole physical custody."** The right of one individual to exclusive physical custody of the child.

23 Pa.C.S.A. § 5322.

When awarding any form of custody, Section 5328(a) of the Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

- 9 -

**§ 5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

This Court has stated that "[a]ll of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (internal emphasis omitted). Further,

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is

required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-823. With these standards in mind, we turn to the merits of this appeal.

In its Rule 1925(a) opinion, the trial court analyzed Mother's issues as follows:

## APPLICABLE LAW AND STANDARD OF REVIEW:

When custody is at issue, the paramount concern is the best interests of the child[ren]. Consequently, 23 Pa.C.S.A. § 5328 requires this [c]ourt to assess sixteen (16) specific factors as a framework for determining the best interest of the child[ren]. The statute further requires this [c]ourt to "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d).

> []An appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.[]

***T.B. v. L.R.M.***, 874 A.2d 34, 37 (Pa. Super. 2005) (*citing* ***Liebner v. Simcox***, 834 A.2d 606, 609 (Pa. Super. 2003). The standard of review of a visitation order is the same as that for a custody order. ***Id.***

## DISCUSSION

At the time of the final review hearing, the trial court made findings of fact pursuant to 23 Pa.C.S.A. § 5328 and reduced these findings to writing. Of the factors listed in the statute, several are either inapplicable or favor neither party. Those factors are 23 Pa.C.S.A. § 5328(a)(3), ability to perform parental

- 12 -

duties; 23 Pa.C.S.A. § 5328(a)(5), sibling relationships; 23 Pa.C.S.A. § 5328(a)(6), availability of extended family; 23 Pa.C.S.A. § 5328(a)(11), proximity of the parties to one another; 23 Pa.C.S.A. § 5328(a)(12), regarding child-care arrangements; and 23 Pa.C.S.A. § 5328(a)(14), regarding drug and/or alcohol abuse.

Each parent was able to feed and clothe the boys properly while in their care. Both Mother and Father had extended family living in the area to support them and the [C]hildren if necessary. The boys got along well with their siblings, and had a good relationship with each regardless of [in] which home they stayed. The parties live in close proximity to one another; transportation and associated costs are therefore inapplicable. Neither party had a drug or alcohol problem. The boys, ages [13] and [14], were old enough that ability to make child-care arrangements was not at issue.

Mother[] first contends that despite the remaining findings of fact, the trial court failed to consider the [C]hildren's best interest when it refused to fashion a holiday visitation schedule and gave little weight to the [C]hildren's preferences. The other facet of Mother's appeal claims the trial court abused its discretion making findings of facts that concern[ed] Mother's mental health, her ability to care for the [C]hildren, and whether Mother attempted to turn the Children against [] Father. Each of Mother's contentions are without merit.

There is no doubt both parents want to see their children. However, in light of the contents of the Instagram and [Snapchat] messages, and Father's unilateral decision to terminate [P.F.'s] and [B.F.'s] visitation with [] Mother in June, it is clear neither parent is likely to encourage or permit frequent and continuing contact between the boys and the other parent so long as Mother's mental health and conduct remain a concern.

Much of Father's decision to keep the boys from [] Mother stemmed from concern for [P.F.'s] emotional well-being due to Mother's actions. A great deal of testimony was presented showing Mother attempted to influence the boys, especially [P.F.], in an unhealthy way. Messages and pictures displayed for [P.F.] to see related were all calculated to alienate him from his father. The first and eighth factors outlined in 23 Pa.C.S.A. § 5328(a)(1) and (8) favor [] Father.

Emotional abuse on behalf of [] Mother remains a critical part of this case and poses a continued risk of harm to the two youngest children. Mother's constant messaging and contact with [P.F.] after the trial court issued its no contact order demonstrates Mother's predisposition for defiance and inability to think of others before herself. Mother's contact with [P.F.] clearly causes [P.F.] severe emotional trauma, as evidenced by his tearful demeanor when interviewed in chambers, and his responses to [] Mother *via* social media platforms where he urged her to "act normal" and stated he was afraid he would get his iPod taken away if "they" knew they were talking. The second factor, as outlined in 23 Pa.C.S.A. §5328(a)(2), favors [] Father.

The record shows Father is best able to provide a stable environment conducive to meeting the boys' needs. [] Father leads a healthier lifestyle, both physically[] and emotionally, than Mother. Mother's diagnosis of generalized anxiety, though treated with numerous medications, is not enough, standing by itself, to conclude she could not successfully parent, but is still problematic, given her actions.

[P.F.'s] constant exposure to Mother's insecurities and disobedience to the court order places him [] squarely in the middle of his [parents'] dispute and has not afforded him the stable environment he needs in order to flourish. While Mother may be able to tend to the boys' educational and physical needs, she falls short of providing for their emotional, developmental, and special needs. In many ways, Mother's behavior leads [P.F.] to feel he needs to take care of her, be there for her, and remind her that her actions could get them in trouble.

No evidence was presented [that] Father attempted to involve [P.F.] or [B.F.] in the dispute in any way, nor was evidence presented Father suffered from any mental or physical defect. To the contrary, all testimony presented tended to show [P.F.] has flourished in the stability of [F]ather's care.

Though the boys' condition has improved while living with [F]ather full time, they still have a long road to travel with therapy. [P.F.] requires anxiety medication and frequent counseling. Given the boys progress in [] Father's home, despite Mother's damaging contact, this evidence overwhelmingly demonstrates it [is] in the boys' best interests to maintain stability during the week, whether a holiday falls on a weekday or not. [] Mother was not denied any of her weekend

- 14 -

visits; she was merely denied holiday contact if that contact fell outside the regular visitation schedule thereby upsetting the *status quo*.

The fourth, ninth, tenth, and fifteenth factors outlined in 23 Pa.C.S.A. § 5328(a)(4), (9), (10) and (15) favor [] Father and offer additional insight into how the best interests of [P.F.] and [B.F.] would be served by Father continuing to have full legal and physical custody.

Th[e trial] court did not give great weight to [P.F.'s] testimony. Given the high level of conflict between his parents and its effect on him, his emotional demeanor and his well-documented need for counseling, th[e trial] court was not convinced [that] reverting back to any type of shared custody arrangement was in his best interests, even if it was what he preferred. Th[e trial] court was especially concerned with the contact Mother had with [P.F.] by way of social media and other messaging systems and the content of these items. [P.F.'s] internal conflict called into question his ability to give a well-reasoned opinion regarding his wishes, and whether he was candid with the court, or slanted his answers to protect [M]other. For these reasons, [P.F.'s] testimony was not given great weight.

[B.F.], on the other hand, gave the impression he was happy-go-lucky and care[-]free. He had no preference regarding custody or visitation. Nor did he seem as outwardly traumatized as his older brother by their living situation. He reported things were going well in [F]ather's home, but that he missed [M]other. However, no evidence was presented he was targeted by [] Mother in a way similar to his brother. ***See*** 23 Pa.C.S.A. § 5328(a)(7).

An extremely high level of conflict exists between the parties. The Children are paying the price for it. However, while in [F]ather's care, the testimony shows the [C]hildren do much better. The thirteenth factor, as outlined in 23 Pa.C.S.A. § 5328(a)(13), favors [] Father.

No other relevant factors were applicable to this case. ***See*** 23 Pa.C.S.A. § 5328(a)(16).

Trial Court Opinion, 1/19/16, at 6-11 (some internal citations and capitalization omitted).

In her first claim on appeal, Mother argues that the trial court failed to recognize or provide her with a specific holiday schedule in the custody order. Mother asserts that, prior to the entry of the order, the Children had enjoyed holidays with her. She contends that, in Erie County, it is common, if not universal, for custody orders to include a special provision for major holidays so that the parents may see their children. Mother complains that the trial court advised her counsel, on the record at the November 20, 2015 hearing, that it would be "a recipe for disaster" to allow her holiday visits with the Children. N.T. Hearing, 11/20/15, at 22. The trial court found that continuity and stability were of paramount importance to the well-being of the Children, especially, P.F. We find the trial court's decision not to provide Mother with a specific holiday schedule in the custody order challenged on appeal is reasonable, given the facts of this case, as found by the trial court.

In her second issue, Mother contends that, in the November 20, 2015 order, the trial court made several findings that she suffered from a mental health condition that precluded her from effectively parenting the Children. Mother states that she complied with the trial court's previous direction to undergo a psychological evaluation. Mother alleges that the uncontroverted psychological expert testimony of Dr. DeMarco demonstrated that her diagnosis is generalized anxiety disorder, and that she is appropriately receiving treatment for that disorder.

A court is not obligated to accept the recommendations of experts, so long as there is competent evidence to support the court's conclusions in the record. **Masser v. Miller**, 913 A.2d 912 (Pa. Super. 2006); **Nomland v. Nomland**, 813 A.2d 850 (Pa. Super. 2002). As there is competent evidence in the record in this matter to support the trial court's decision, we find no merit to Mother's second argument.

In her third issue, Mother asserts that both P.F. and B.F. expressed their preference to reside primarily with Mother, and that the trial court improperly disregarded their testimony. Our case law has long held that a child's preference is "an important factor that must be carefully considered in determining the child's best interest." **Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006). "The weight to be accorded the child's preference varies with the age, maturity and intelligence of the child and the reasons given for the preference." **Grieb v. Driban**, 458 A.2d 1006, 1007 (Pa. Super. 1983). Moreover, we have stated that, "[a]s children grow older, more weight must be given to the preference of the child." **Id.**; **see also Johns v. Cioci**, 865 A.2d 931, 944 (Pa. Super. 2004) (holding that the trial court abused its discretion by giving only limited weight to the preference of an intelligent and articulate 12-year-old child).

Here, the trial court explained the rationale for its decision. In addition, in its opinion pursuant to Pa.R.A.P. 1925(a), the trial court considered the requisite section 5328(a) factors. **See** Trial Court Opinion,

1/19/16, at 6-11. Based on these findings, in addition to the Children's ages, and especially P.F.'s reasons for wanting to spend more time with Mother, including helping to protect her from her own actions, the trial court's decision to place less weight on the Children's preference is reasonable.

In her fourth issue, Mother argues that the trial court awarded Father sole legal custody of the Children without specifically articulating any reasons for so doing in its November 20, 2015 findings of fact. In support of her argument, Mother relies on **Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008), for the factors to be considered in deciding whether to award shared legal custody. Those factors are as follows: 1) whether both parents are fit, capable of making reasonable child-rearing decisions, and willing and able to provide love and care for their children; 2) whether both parents evidence a continuing desire for active involvement in the child's life; 3) whether the child recognizes both parents as a source of security and love; and 4) whether a minimal degree of cooperation between the parents is possible. **Id.** Mother asserts that the trial court did not specifically address or articulate its reasons for awarding sole legal custody to Father. She urges that any evidence presented that she is in any way unfit or unable to make child-rearing decisions was discredited by the testimony of her therapist, Bobbi Cullers, Dr. DeMarco, and the subsequent expungement of the

indicated finding of the Erie County Office of Children, Youth and Families ("OCY") that she had committed emotional abuse with regard to C.F.

The trial court clearly found lacking the first, third, and fourth prongs of the *Yates* test, *i.e.*, whether both parents are fit and capable of child-rearing; whether the Children find that both parents are a source of love and security, and whether a minimal degree of cooperation between the parents is possible. The trial court stated the following at the hearing on November 20, 2015:

> **THE COURT:** . . . This is horribly, horribly sad. I mean, [P.F.'s] 14 years old, and he's very bright, very, very sensitive, and he is going to need help from Dr. Baumgratz for a long time, in my view. And I'm not going to compound that and risk making it worse. I'm going to do the best I can to bring some semblance of continuity and stability, even if he doesn't like it.
>
> So my original order of August 26[, 2015] will stand. Custody is to remain with the father. Mother gets visitation every other weekend.

N.T. Hearing, 11/20/16, at 22.

Moreover, the trial court did look at the custody factors set forth in section 5328 of the Act and considered whether those factors weighed in favor of giving Father sole legal custody or giving Mother and Father shared legal custody. Upon consideration of the factors, the trial court determined that giving Father sole legal custody was in the Children's best interest.

With regard to factor 5328(a)(1), the trial court found that although both parents want to see the Children, Mother does try to influence them in an unhealthy way, so that factor 5328(a)(1) favors Father. N.T. Hearing,

- 19 -

11/20/15, at 24-25. With regard to factor 5328(a)(2), the trial court found that, although Mother's emotional abuse of P.F. had been "indicated," and that the finding was under appeal, it was evidence of abuse by Mother of P.F. *Id.* at 25-26. The trial court stated that it would not give the finding of abuse any weight until there was a decision on the appeal. *Id.* at 25-26. Regarding factor 5328(a)(4), the trial court found that Father provides the Children with more stability and continuity in their education, family life, and community life. *Id.* at 26. The trial court found that Father is more stable physically and mentally, and provides the Children with a better environment. *Id.* The trial court found that Mother still had serious issues that she needs to address. *Id.*

In regard to factor 5328(a)(8), (9), (10),and (15), the trial court found that Mother had attempted to turn the Children against Father; that Father was more stable emotionally and that Mother had mental health issues to address; that Father was more likely to attend to the Children's daily physical, emotional, developmental, educational, and special needs; and, that Mother has mental conditions that make it difficult for her to successfully parent the Children. *Id.* at 28-31. Additionally, regarding factor 5328(a)(13), the level of conflict between the parties and willingness and ability to cooperate, the trial court found as follows:

> **THE COURT:** If I were to rate the level of conflict between them on a scale of one to ten, I would rate it as a fifteen. It's just – just not good. And unfortunately, the [C]hildren are paying the price for it. They cannot cooperate. They have not

been able to cooperate. And I'm not placing blame, it's just the way it's been. So given that, I have to step in and do what I think is best.

N.T. Hearing, 11/20/15, at 30.

In the conclusion of its Rule 1925(a) opinion, the trial court responded to Mother's contention that it improperly awarded Father sole legal custody by explaining why it determined that she could not successfully co-parent with Father. The court emphasized that Mother could not cooperate or comply with court orders regarding custody. The trial court stated, as follows:

> Mother has proved time and time again she is unable to cooperate or comply with court orders, to the detriment of her children. The best interests of the boys are best served by maintaining stability and continuity in [] Father's home with regular weekend visits with [] Mother until her mental health stabilizes and she realizes her children should have a relationship with their father, despite the negative feelings she may have towards him.
>
> It is therefore respectfully requested the Superior Court affirm the trial court's Order.

Trial Court Opinion, 1/19/16, at 11.

We find no merit to Mother's argument concerning the trial court's failure to consider shared legal custody, as the trial court, in fact, thoroughly considered shared legal custody. We remind the parties that they must "isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor." *In re Wesley J.K.*, 445 A.2d at 1249.

In her fifth issue, Mother contends that the trial court ignored Father's conduct and instead focused solely on her behavior, concluding that she attempted to turn the Children against Father. Citing 23 Pa.C.S.A. § 5328(a)(8), Mother asserts that the trial court unduly focused on her conduct in posting matters to social media, and either ignored or excused the conduct of Father. Mother alleges that the trial court failed to rule on her contempt petition against Father that had raised several allegations regarding Father, and his attempts to obstruct Mother's involvement with the Children.

We do not agree with Mother's argument. The trial court appropriately found from the competent evidence in the record that Mother engaged in behavior that was impacting the Children in a negative way, especially P.F., and that Father was attempting to protect them from her behavior by providing them stability in an environment in which they have flourished. Further, the trial court found that there was no evidence that Father attempted to involve P.F. or B.F. in the dispute between the parents in any way, nor was evidence presented that Father suffered from any mental or physical defect. The competent evidence in the record supported the trial court's conclusion that Mother was attempting to turn the Children away from Father, and that her behavior was causing P.F. stress and anxiety.

In her sixth issue, Mother claims that it is clear from a consideration of the evidence presented, as a whole, from the commencement of the

hearings through the final hearing on November 20, 2015, that the trial court's custody order is contrary to the Children's best interests. Specifically, Mother argues as follows:

> Mother's custody rights were suspended on allegations that she emotionally abused the parties' oldest child. Once these allegations were negated and the indicated finding was expunged, efforts turned to the middle child[, P.F.]. Mother was indicated for emotional abuse that named [P.F.] as the subject child. The record shows instance after instance of Father [s]tonewalling Mother's efforts to be a part of her children's lives. Father's conduct was ignored. Mother became the focus for the trial court and only her conduct was considered by the trial court. Despite Mother providing evidence that she was not emotionally abusing the [C]hildren, that she did not suffer from a significant mental health diagnosis and that both she and the [C]hildren wanted to have increased contact, the trial court awarded Father full legal and physical custody of the [C]hildren, which was an abuse of discretion.

Mother's Brief at 15 (internal footnote omitted). Mother, thus, contends that the trial court's decision was against the weight of the evidence.

As stated above, with regard to issues of credibility and weight of the evidence, we must defer to the trial judge, who viewed and assessed the witnesses first-hand. The trial court explained the rationale for its decision, and considered the requisite section 5328(a) factors in its Rule 1925(a) opinion. The weight that it placed on the testimony is supported by the competent evidence in the record, and is not unreasonable.

Mother appears to be requesting that this Court make new factual findings and/or re-weigh the evidence. The trial court's conclusions, in light of the trial court's sustainable findings on each of the custody best interest

factors, are not unreasonable, nor did the trial court commit an error of law. **C.R.F.**, 45 A.3d at 443. This Court must "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **Id.** After a careful review of the record in this matter, we find no merit to Mother's argument. We, therefore, affirm the trial court's custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2016